UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| WANDA GÓMEZ, individually, and as parent and in representation of minor A.L.G., **Plaintiffs,**<br><br>v.<br><br>WALGREEN OF PUERTO RICO, INC.; JOHN/JANE DOE STORE EMPLOYEES 1– 10; JOHN/JANE DOE SECURITY PERSONNEL OR CONTRACTORS 11–20; and UNKNOWN INSURANCE COMPANY 1–5, **Defendants.** | Civil No. _____ |

COMPLAINT

TO THE HONORABLE COURT:

Plaintiffs Wanda Gómez, individually, and as parent and next friend of minor A.L.G., by and through undersigned counsel, allege as follows:

I. NATURE OF THE ACTION

1. 1. This is a civil-rights and tort action arising from the racially discriminatory accusation, detention, and search of Plaintiffs, a Black and Afro-descendant mother and her minor Black and Afro-descendant daughter, inside a Walgreens store in San Juan, Puerto Rico, while they were lawful customers attempting to shop and purchase merchandise on the same terms and conditions available to white customers.

2. Plaintiffs entered the Walgreens store as lawful customers for the purpose of shopping, selecting merchandise, and engaging in an ordinary retail transaction on the same terms and conditions available to other customers.

3. Instead of being treated equally, Plaintiffs were singled out as suspected thieves, escalated to police intervention, detained, and searched inside the store.

4. Walgreens, through its employees, agents, managers, security personnel, loss-prevention personnel, and/or other representatives, caused, requested, prompted, encouraged, facilitated, permitted, ratified, and/or materially contributed to the challenged intervention by identifying Plaintiffs as suspected shoplifters, supplying or adopting a purported basis for suspicion, and allowing the intervention to proceed on Walgreens' premises as part of Walgreens' store-security and loss-prevention operations.

5. The discriminatory treatment of Plaintiffs was motivated, in whole or in substantial part, by race, color, racial stereotyping, racial profiling, and discriminatory assumptions associating Black customers with theft or criminality.

6. Plaintiffs seek damages under 42 U.S.C. § 1981 and under supplemental Puerto Rico law, including Puerto Rico Law 131, the Puerto Rico Constitution, the Puerto Rico Civil Code, and Puerto Rico's direct-action statute against insurers.

## II. JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States, including 42 U.S.C. § 1981.

8. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' Puerto Rico-law claims because those claims form part of the same case or controversy as the federal claim.

9. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (2) because a substantial part of the events and omissions giving rise to this action occurred in this District, and because at least one Defendant resides or does business in this District.

10. Personal jurisdiction exists over Defendants because the conduct complained of occurred in Puerto Rico and arose from the operation of a retail store in Puerto Rico.

### III. PARTIES

11. Plaintiff Wanda Gómez is an adult natural person.

12. Plaintiff A.L.G. is a minor child who appears herein through her mother, Wanda Gómez.

13. At all relevant times, Plaintiffs were Black and Afro-descendant persons.

14. Defendant Walgreen of Puerto Rico, Inc. ("Walgreens") is, upon information and belief, a corporation organized under the laws of Puerto Rico and doing business in Puerto Rico, including operating Walgreens retail stores open to the public.

15. Walgreens may be served through its resident agent, Corporation Service Company Puerto Rico Inc., c/o RVM Professional Services, LLC, A4 Reparto Mendoza, Humacao, Puerto Rico 00791, or through any other agent authorized by law.

16. Defendant John/Jane Doe Store Employees 1–10 are Walgreens employees, managers, supervisors, and/or agents whose identities are presently unknown and who participated in, directed, authorized, requested, approved, facilitated, encouraged, acquiesced in, ratified, and/or failed to stop the unlawful and discriminatory conduct alleged herein.

17. Defendant John/Jane Doe Security Personnel or Contractors 11–20 are security guards, loss-prevention personnel, or third-party security contractors, if any, whose identities are presently unknown and who participated in, directed, requested, approved, facilitated, or ratified the conduct alleged herein.

18. Defendant Unknown Insurance Company 1–5 are insurers whose true names are presently unknown but who, upon information and belief, issued one or more liability insurance policies

affording coverage for the acts, omissions, premises, operations, employees, security personnel, and/or damages alleged in this Complaint.

19. Plaintiffs reserve the right to amend this Complaint to substitute the true names of any Doe Defendants and insurers as they are identified through discovery.

## IV. FACTUAL ALLEGATIONS

20. On or about October 8, 2025, Plaintiffs entered the Walgreens store located at Galería Pacífico, 12 Calle Teresa Jornet, San Juan, Puerto Rico 00926 (the "Store").

21. Plaintiffs entered the Store as lawful customers intending to browse, select, and purchase merchandise offered for sale to the public.

22. Plaintiffs were entitled to the same access, service, treatment, benefits, privileges, terms, and conditions of shopping and contracting as white customers.

23. Plaintiffs were not trespassing, were not disruptive, were not concealing stolen goods, and were not engaged in any conduct that objectively justified being treated as criminal suspects. Plaintiffs carried purses and/or personal belongings in the ordinary manner in which retail customers routinely shop. At all relevant times, Plaintiffs were engaged in ordinary customer behavior consistent with shopping, browsing, comparing merchandise, and/or deciding whether to purchase items offered for sale by Walgreens.

24. Plaintiffs had not passed any point of sale with unpaid merchandise, had not attempted to leave the Store with unpaid merchandise, and had not engaged in any objective conduct that would reasonably justify accusing them of theft. Plaintiffs' presence in the Store was part of an ordinary retail relationship with Walgreens, including the right to browse merchandise, select items for purchase, receive non-discriminatory service, and complete a retail transaction without being subjected to race-based suspicion, humiliation, or police escalation.

25. While Plaintiffs were inside the Store, a Puerto Rico police officer approached them, accused them of theft, detained them, and searched their purses and/or personal belongings.

26. The intervention occurred without a warrant and, upon information and belief, without probable cause, reasonable suspicion, or any objectively reliable factual basis sufficient to justify the accusation, detention, and search.

27. Plaintiffs did not voluntarily consent to the detention and search.

28. The incident took place inside a public retail establishment, exposing Plaintiffs to humiliation, fear, shame, anxiety, embarrassment, and emotional distress.

29. The minor Plaintiff experienced fear and trauma both from being subjected to the intervention and from witnessing her mother being treated as a criminal suspect in public.

30. Upon information and belief, Walgreens personnel observed Plaintiffs inside the Store, selected them for heightened scrutiny, and reported or caused them to be reported as supposed suspects.

31. Upon information and belief, Walgreens personnel initiated, requested, triggered, encouraged, and/or materially contributed to the police intervention. Walgreens personnel and/or security-related personnel reported Plaintiffs as suspected shoplifters.

32. Upon information and belief, Walgreens personnel pointed Plaintiffs out, identified them as supposed suspects, supplied the purported basis for suspicion, and/or remained present while the accusation, detention, and search occurred.

33. Upon information and belief, Walgreens personnel knew the detention and search were occurring on Walgreens' premises and permitted the conduct to continue rather than intervening to protect Plaintiffs.

34. Upon information and belief, Walgreens accepted, used, and/or benefited from the intervention as part of its store-security, loss-prevention, and/or customer-monitoring practices.

35. Plaintiffs were singled out because they are Black and Afro-descendant.

36. The race and color of Plaintiffs were substantial motivating factors and but-for causes of the challenged treatment.

37. Upon information and belief, Walgreens personnel associated Plaintiffs' race, color, and appearance with dishonesty, theft, criminality, or heightened suspicion.

38. Upon information and belief, similarly situated white customers are not treated in the same manner when engaging in ordinary shopping behavior, including carrying handbags, browsing merchandise, comparing products, moving through multiple aisles, shopping with children, and remaining in the store while deciding what to buy.

39. Upon information and belief, white customers who engage in comparable retail conduct are not escalated to police intervention, accused of theft, detained, or searched absent materially different objective facts. Plaintiffs' conduct was ordinary and indistinguishable from conduct routinely engaged in by other Walgreens customers, including browsing aisles, carrying purses or personal belongings, moving through the Store, shopping with a child, and taking time to decide whether to purchase merchandise. Upon information and belief, Walgreens did not subject non-Black customers engaging in comparable ordinary shopping behavior to the same escalation, accusation of theft, police intervention, detention, or search. The absence of objective evidence of theft, combined with the decision to single out Plaintiffs and escalate the matter to police intervention, supports a reasonable inference that race and color were but-for causes of the challenged treatment.

40. Upon information and belief, the conduct at issue was not a neutral mistake but the product of racial profiling, racial stereotyping, implicit and/or explicit bias, and/or deliberate indifference to race discrimination in Walgreens' operations.

41. Plaintiffs sought to engage in a retail transaction with Walgreens and to enjoy the full range of benefits, privileges, terms, and conditions of that commercial relationship.

42. As a direct result of Defendants' conduct, Plaintiffs' ability to continue shopping, complete the contemplated transaction, and enjoy the commercial relationship on equal terms was materially interfered with, degraded, and disrupted.

43. Walgreens owed Plaintiffs, as customers and invitees, duties of reasonable care, equal treatment, lawful and non-discriminatory security practices, proper training, and proper supervision.

44. Walgreens also owed Plaintiffs a duty not to use race or color as a proxy for suspicion, not to falsely accuse them of theft, not to trigger or facilitate an unjustified police intervention, and not to expose them to humiliating and unnecessary invasions of privacy.

45. Upon information and belief, Walgreens failed to implement and enforce adequate policies prohibiting racial profiling, discriminatory suspicion, unjustified accusations of theft, unreasonable escalation to police, and discriminatory treatment of Black patrons.

46. Upon information and belief, Walgreens failed adequately to train, supervise, monitor, discipline, and retain its employees, managers, and security-related personnel concerning racial bias, equal treatment of customers, lawful loss-prevention practices, and appropriate police involvement.

47. Upon information and belief, Walgreens maintained, tolerated, encouraged, or was deliberately indifferent to customs, practices, or informal norms under which Black customers

were more likely than white customers to be watched, suspected, reported, escalated, detained, or searched despite comparable conduct.

48. On or about October 22, 2025, Walgreens received written notice of Plaintiffs' claims and a preservation demand covering surveillance footage, guard logs, internal communications, and related electronically stored information.

49. From that point forward, Walgreens had notice of a foreseeable claim and a duty to preserve relevant evidence.

50. Plaintiffs do not assert a standalone spoliation cause of action in this Complaint, but expressly reserve all rights to seek preservation relief, expedited discovery, sanctions, evidentiary inferences, and any other remedy allowed by law and rule.

51. As a direct and proximate result of Defendants' conduct, Plaintiffs suffered emotional distress, humiliation, shame, anxiety, fear, trauma, mental anguish, and moral damages, in addition to all other damages recoverable by law.

COUNT I
42 U.S.C. § 1981
Race Discrimination in Retail Contracting
Against Walgreens and Doe Store/Security Defendants

52. Plaintiffs reallege and incorporate by reference Paragraphs 1 through 51 as if fully set forth herein.

53. Plaintiffs, as Black and Afro-descendant persons, are members of a racial class protected by 42 U.S.C. § 1981.

54. Walgreens is a private retail business offering goods and services to the public.

55. Plaintiffs sought to make, perform, and enjoy a retail contractual relationship with Walgreens on the same basis as white customers.

56. That protected relationship included the right to browse, select merchandise, proceed toward purchase, complete a retail transaction, and enjoy the full benefits, privileges, terms, and conditions of the commercial relationship offered by Walgreens. Plaintiffs' protected retail relationship with Walgreens was not limited to the final exchange of money at the register. It included the ordinary incidents of retail contracting, including entering the Store as customers, browsing merchandise, selecting items, receiving equal treatment from store personnel, and proceeding toward purchase without race-based interference. Defendants' conduct materially interfered with that protected retail relationship by interrupting Plaintiffs' shopping, branding them as suspected thieves, subjecting them to police intervention, and making it impossible or unreasonable for Plaintiffs to continue shopping and complete the contemplated retail transaction on equal terms.

57. Defendants intentionally interfered with Plaintiffs' right to make, perform, and enjoy a retail contractual relationship with Walgreens by subjecting them to race-based suspicion, accusation, humiliation, police escalation, detention, and search while they were lawful customers engaged in ordinary shopping activity.

58. In the alternative, because of the coordinated action between Walgreens personnel and law-enforcement personnel, Defendants also deprived Plaintiffs of the same protection, security, benefits, privileges, terms, and conditions afforded to white customers in the use and enjoyment of Walgreens' retail services.

59. Defendants treated Plaintiffs less favorably than similarly situated white customers.

60. Plaintiffs' race and color were but-for causes of the discriminatory treatment and interference with Plaintiffs' protected rights under § 1981.

61. As a direct and proximate result, Plaintiffs suffered damages recoverable under federal law, including compensatory damages, emotional-distress damages, nominal damages where appropriate, punitive damages to the extent permitted by law, attorneys' fees, costs, and all other available relief.

COUNT II
Puerto Rico Civil Rights Act
Law No. 131 of May 13, 1943, as amended
Against Walgreens and Doe Store/Security Defendants

62. Plaintiffs reallege and incorporate by reference Paragraphs 1 through 51 as if fully set forth herein.

63. Walgreens operates a public business and public accommodation within the meaning of Puerto Rico law.

64. Puerto Rico law prohibits denying any person access, service, and equal treatment in public places and businesses because of race or color.

65. Walgreens and the Doe Defendants denied Plaintiffs equal treatment, equal service, and equal enjoyment of the Store because of race and color.

66. Walgreens and the Doe Defendants subjected Plaintiffs to unequal, degrading, humiliating, and discriminatory treatment that was not imposed on all customers generally and that was directed at Plaintiffs because they are Black and Afro-descendant.

67. Defendants thereby violated Puerto Rico Law 131.

68. As a direct and proximate result, Plaintiffs suffered damages recoverable under Puerto Rico law.

COUNT III
Puerto Rico Constitution
Article II, Sections 1, 8, and 10
Against Walgreens and Doe Store/Security Defendants

69. Plaintiffs reallege and incorporate by reference Paragraphs 1 through 51 as if fully set forth herein.

70. Article II, Section 1 of the Puerto Rico Constitution protects dignity, equality, and freedom from discrimination on account of race and color.

71. Article II, Section 8 protects every person against abusive attacks on honor, reputation, and private or family life.

72. Article II, Section 10 protects the right of persons to be secure in their persons and effects against unreasonable searches and seizures.

73. Defendants violated Plaintiffs' dignity, equality, honor, reputation, private life, and security of person and effects.

74. By singling Plaintiffs out because of race, escalating them to police intervention, permitting and/or facilitating a search of their personal belongings, and exposing them to public humiliation inside a commercial establishment, Defendants infringed rights protected by the Puerto Rico Constitution.

75. As a direct and proximate result, Plaintiffs suffered constitutional and compensatory damages under Puerto Rico law.

COUNT IV
Puerto Rico Civil Code
Extra-Contractual Liability / Fault / Negligence / Intentional Misconduct
Articles 1536 and 1538
Against All Defendants

76. Plaintiffs reallege and incorporate by reference Paragraphs 1 through 51 as if fully set forth herein.

77. Defendants caused damages to Plaintiffs through fault, negligence, recklessness, intentional misconduct, deliberate indifference, and/or gross disregard of Plaintiffs' rights and dignity.

78. Defendants falsely accused Plaintiffs, racially profiled Plaintiffs, caused or facilitated an unjustified police intervention, permitted or encouraged a humiliating detention and search, and exposed Plaintiffs to emotional harm and moral damages. Defendants' conduct constituted fault, negligence, recklessness, and/or intentional misconduct because Defendants lacked an objectively reasonable basis to treat Plaintiffs as criminal suspects and failed to exercise reasonable care before escalating the matter to police intervention. Defendants' conduct was particularly harmful because it occurred in public, in the presence of store personnel, customers, and/or law-enforcement personnel, and because it involved a minor child who was forced to experience and witness her mother being treated as a criminal suspect.

79. Plaintiffs' damages were a foreseeable result of falsely accusing lawful customers of theft, escalating them to police intervention without sufficient factual basis, and subjecting them to degrading treatment based on race and color.

80. Defendants' conduct was unlawful and unreasonable and was a substantial factor in causing Plaintiffs' injuries.

81. Plaintiffs are entitled to all damages recoverable under Puerto Rico law, including compensatory damages, moral damages, and any additional indemnity or enhanced recovery permitted by law based on the nature of the conduct proved at trial.

COUNT V
Negligent Training, Supervision, Retention, Security Practices, and Vicarious Liability
Puerto Rico Civil Code Articles 1536 and 1540
Against Walgreens

82. Plaintiffs reallege and incorporate by reference all prior parapgrahps as if fully set forth herein.

83. Walgreens had a duty to hire, train, supervise, monitor, discipline, and retain employees, managers, agents, loss-prevention personnel, and security-related personnel in a lawful, reasonable, and non-discriminatory manner.

84. Walgreens had a duty to maintain and enforce policies and practices prohibiting racial profiling, unjustified shoplifting accusations, unnecessary police escalation, discriminatory treatment of Black customers, and unreasonable invasions of customers' privacy and dignity.

85. Walgreens breached those duties by failing to ensure that its personnel used objective, race-neutral criteria before accusing customers of theft, involving law enforcement, or participating in any intervention that could foreseeably result in a customer's detention, search, humiliation, or emotional harm.

86. Upon information and belief, Walgreens failed adequately to train and supervise personnel regarding:

a. race discrimination, implicit bias, and racial profiling;

b. equal treatment of customers in public retail establishments;

c. lawful and non-discriminatory loss-prevention practices;

d. the objective facts required before reporting a customer as a suspected shoplifter;

e. when police involvement is and is not warranted;

f. how to avoid humiliating, unnecessary, and discriminatory detentions or searches;

g. how to intervene or correct a baseless accusation once it becomes apparent that a customer is being treated unfairly; and

h. how to preserve incident-related evidence once litigation is reasonably anticipated.86. Upon information and belief, Walgreens failed adequately to train and supervise personnel regarding:

a. race discrimination and racial profiling;

b. equal treatment of customers;

c. lawful and non-discriminatory loss-prevention practices;

d. when police involvement is and is not warranted;

e. how to avoid humiliating, unnecessary, and discriminatory detentions; and

f. how to preserve incident-related evidence once litigation is reasonably anticipated.

87. Walgreens is also vicariously liable for the acts and omissions of its employees, managers, agents, and security-related personnel acting within the course and scope of their duties and on the occasion of their functions.

88. Walgreens' direct negligence and vicarious responsibility were substantial factors in causing Plaintiffs' injuries.

**COUNT VI**
Direct Action Against Insurer(s)
26 L.P.R.A. § 2003
Against Unknown Insurance Company 1–5

89. Plaintiffs reallege and incorporate by reference Paragraphs 1 through 51 as if fully set forth herein.

90. Upon information and belief, one or more liability insurance policies issued to Walgreens were in force on the date of the incident.

91. Upon information and belief, those policies provide coverage for some or all of the damages alleged herein, subject to their terms, conditions, exclusions, and limits.

92. Under Puerto Rico law, Plaintiffs are entitled to proceed directly against the applicable insurer or insurers for covered damages.

93. Plaintiffs therefore seek judgment against Unknown Insurance Company 1–5 for all covered amounts up to the applicable policy limits.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants and award the following relief:

A. Compensatory damages in an amount to be determined at trial;

B. Emotional-distress damages, moral damages, and all non-economic damages allowed by law;

C. Nominal damages on the federal claim where appropriate;

D. Punitive damages on the federal claim to the extent permitted by law;

E. Statutory or enhanced damages, additional indemnity, or similar relief available under Puerto Rico law to the extent supported by the evidence and permitted by law;

F. Prejudgment and postjudgment interest as allowed by law;

G. Costs, expenses, and reasonable attorneys' fees under 42 U.S.C. § 1988 and any other applicable provision of law;

H. An order requiring preservation of all remaining evidence relevant to this action, including surveillance video, incident reports, call logs, internal communications, employee statements, security records, training records, and electronically stored information;

I. Expedited discovery, if necessary, to identify Doe Defendants, locate surveillance and electronically stored evidence, and determine the identity of the responsible insurer(s); and

J. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED.

This June 19, 2026

*s/ Amexis J. Bonilla Nieves*
USDC-PR 225909
**AJBN LAW OFFICE**
1225 Juan Ponce de Leon, PH
San Juan, P.R. 00907
(939) 439-0487
ajbnlaw@gmail.com